UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK AMATANGELO, JOHN L. ARGAY,
WILLIAM J. BONEBERG, PAUL K. DAMMERS,
DANIEL DARJANY, GARY P. DENAULT,
CHRISTOPHER DOOL, ROGER A. DOOLEY,
ROBERT EASTHAM, WILLIAM A. FLEMING,
RICHARD J. HANDZEL, GERALD D. LINDSEY,
WILLIAM LOBKO, KAREN S. MAXWELL,
JOHN S. McCOY, ROBERT T. MEARON,
DAVID R. NORTON, SHARON OSBORNE,         DECISION AND ORDER
JAMES R. PATERSON, THEODORE W. PYTEL,
PATRICK REAP, LAWRENCE D. RIORDAN,            04-CV-246S(F)
MICHAEL SCHLEGEL, DAVID SLATTERY,
WILLIAM B. SPENCER, JEFFREY A. STEGER,
ROMAN SZUL and GARY VANHATTEN,

                              Plaintiffs,

                  -vs-

NATIONAL GRID USA SERVICE COMPANY, INC.
and NIAGARA MOHAWK POWER CORPORATION,

                              Defendants.

---

## I.  INTRODUCTION

The Plaintiffs in this ERISA action are seeking declaratory and monetary relief against Defendants National Grid and Niagara Mohawk. All Plaintiffs were first employed by Niagara Mohawk, which merged in or about January 2002 with National Grid, their current or most recent employer. Plaintiffs allege that National Grid unilaterally reduced the benefits available to them under their Employee Group Term Life Insurance Plan ("Plan A") and that, through their participation in Plan A, they were charged an excessive rate for

-1-

supplementary insurance, the proceeds from which were not used exclusively for their benefit.

Pending before this Court is Plaintiffs' third Motion to Compel pursuant to FED. R. CIV. P. 37(a). (Docket No. 32). Plaintiffs' seek an order: (1) compelling Defendant National Grid to comply with a previous Discovery Order ("the previous Order") granting Plaintiffs' Second Motion to Compel; (2) compelling additional discovery; and (3) imposing sanctions, costs and attorney's fees.

## II. BACKGROUND

### A. The Previous Order

The Second Motion to Compel contained, *inter alia,* a request for the production of the original plan documents for Plan A, as well as all amendments, proposed amendments and/or recommendations to change, terminate or otherwise modify Plan A. National Grid produced a 1992 document which ostensibly was only a summary of Plan A. Plaintiffs sought the original plan documents so that any changes in the plan throughout the years could be analyzed. The Honorable John T. Elfvin found this to be relevant to the claim of improper unilateral change and ordered that it be produced. Judge Elfvin also found that a history of premium payments was also relevant (to a determination of whether or not the payments were used for the benefit of Plan A participants) and ordered that it be produced. The pertinent part of the previous Order found as follows:

> After due consideration, the Court hereby finds that plaintiffs have shown good cause that the requested documents which are the subject of the instant motion are "relevant to the subject matter involved in the action" (F.R.Cv.P. 26(b)(1)) and the Court will therefore order that they be produced. Further, defendants have not satisfied the Court that the production of

>the requested documents would be unduly burdensome or expensive.

(Docket No. 31, p. 4). National Grid was directed to respond to the following Supplemental Document Requests:

>1.  A copy of each and every Policy and/or Plan document governing "Plan A" and/or Group Term life insurance for full-time non-represented employees from the inception of Plan A in 1972, including a copy of each and every Amendment made thereto between Plan A's inception in 1972 to the present.
>
>7.  Copies of all proposed Amendments and/or recommendations to change, modify and/or terminate "Plan A" or Niagara Mohawk's Group Term Life Insurance Plan, including the recommendations made by William Dowd to amend Plan A, and which were referred to in Defendant's Interrogatory Response No. 5.
>
>9.  Copies of all Resolutions adopted by the Board of Directors of Niagara Mohawk Power Company, Inc. or Niagara Mohawk Holdings, Inc. and/or all of their successors or subsidiaries wherein "Plan A" or was amended or terminated.
>
>10.  To the extent not already requested or provided, copies of all "Plan Materials" as defined in the Niagara Mohawk Power Corporation Group Term Life Insurance Plan as amended and reinstated effective as of May 1, 1996.

(Docket No. 25-2, pp. 6 - 7).   Niagara Mohawk was directed to respond to the following Document Requests:

>1.  A copy of each and every Policy, Summary Plan Description and/or Plan document governing "Plan A" and/or Group Term Life Insurance for full-time, non-represented employees from the inception of Plan A in 1972, including a copy of each and every Amendment made thereto between Plan A's inception in 1972 to the present.
>
>13. Any and all documents containing any information regarding any employee contributions made by Plaintiffs for

> Plan A insurance coverage from the inception of Plan A insurance coverage, including but not limited to any documents or records reflecting the amount of employee contributions made toward Plan A insurance coverage and any documents or records reflecting the investment, at any time, of said employee contributed funds
>
> 18.  All documents regarding or referring to the annual benefit election forms or annual benefit election individually made by plaintiffs during the entire course of their employment.

(Docket No. 25-3, pp. 7, 9, 10 - 11).

Plaintiffs' counsel, Ms. Pierrot, states that Defendant's non-compliance with the previous Order was discovered during a March 30, 2007 deposition of William Dowd (*see* Supplemental Document Request No. 7, above) who testified that two benefit analysis companies had performed consulting work for Defendants with respect to the employee benefits aspect of the merger. Ms. Pierrot asserts that no documents prepared by either of these consulting companies were ever provided to Plaintiffs and argues that these documents clearly fall within the realm of the previous Order. Further, to the extent that defense counsel (Mr. Orbach) attempts to assert that some documents are privileged, Defendants have failed to provide the requisite privilege logs.

Plaintiffs go on to state that the categories of documents that were produced pursuant to the previous Order were incomplete, that Ms. Pierrot notified Mr. Orbach of the deficiencies on numerous occasions, that additional responsive documents were not provided until the evening before the depositions of three (3) defense witnesses scheduled to be conducted in Syracuse, New York, and that the 126 pages of documents received via facsimile transmission had been in Defendants possession for at least one month prior to this scheduled deposition date. Ms. Pierrot also avers that these two witnesses testified

that they were never asked to look for documents responsive to the at-issue discovery demands until shortly before the actual deposition date, despite the fact that they were originally noticed in 2005.

Plaintiffs seek an order compelling the production of all discovery outstanding and imposing sanctions for violation of the previous Order and the last minute 126 page disclosure, including costs and fees, preclusion of any undisclosed evidence deemed within any of the previous discovery demands, or an order striking Defendants' Answer and Affirmative Defenses.

Defendants urge that they fully complied with the Court's previous Order when they provided 1,314 pages of documents on February 5, 2007. They argue that the additional 126 pages[1] were provided as a courtesy in response to new requests made by Ms. Pierrot just three days earlier, and were not encompassed in the previous Order.

With respect to the benefit consulting companies, Defendants claim that Ms. Pierrot was aware of one of them, Hewitt Associates, as early as 2005, and that documents from this company were included in the February 5 package. Further, they state that Mr. Dowd testified that the other company, Benefits Development Group, did not produce any documents relative to Plan A, the program in dispute.

Lastly, to the extent that Defendants did not maintain a privilege log, Mr. Orbach states that the only documents claimed to be privileged were four (4) pages of draft letters to Plaintiffs' counsel, Mr. Fleming, that Mr. Dowd prepared in consultation with an attorney

---

[1] Defendants point out that they produced 122 pages of documents, not 126 as stated by Plaintiffs' counsel. For continuity of reference, this Court will continue to refer to it as the 126 page disclosure, as that is the number of pages defense counsel noted on the facsimile cover sheet (see Docket No. 34-2).

after Mr. Fleming contacted the company, indicating that litigation might ensue. Mr. Orbach claims that a privilege log relative to these drafts is not necessary because the final letter has been produced and Ms. Pierrot was clearly put on notice, via letter dated March 29, 2007, that the earlier drafts were being withheld as privileged.[2] Regardless, as the current motion does not seek any particular relief based on the alleged failure, this Court will not address the issue.

In Plaintiffs' Reply papers, Ms. Pierrot admits receiving one document from Hewitt Associates in the 1,314 pages of documents Defendants provided on February 5, 2007,[3] but insists that there may well be other documents this company generated for Defendants. Further, Plaintiffs argue that Mr. Orbach's assertion regarding Mr. Dowd's testimony – that Benefits Development Group did not prepare documents relative to Plan A – is inaccurate in that Dowd's testimony related only to a single document about which he was then being questioned and did not relate to any and all documents which might have been generated by this company relative to Plan A. With respect to the 126 page disclosure, Ms. Pierrot points out that, after review of the February 5 package, she contacted Mr. Orbach on two occasions to advise that she considered the responses inadequate and specified what documents may be required to cure these deficiencies (*see* Docket Nos. 33-2 and 34). She urges that the 126 page eve-of-deposition disclosure was in direct response to her objections and was not intended, nor could it reasonably be believed, to be a courtesy

---

[2] The Court believes this to be the cover letter which preceded the 126 page facsimile transmission.

[3] Plaintiffs' counsel asserts that these documents were unorganized and unmarked in that they did not indicate the discovery demand to which they related, resulting in a more difficult and protracted review. Defense counsel has not disputed this claim.

response to new requests.

**B.     The March 30, 2007 Depositions**

Plaintiffs claim that, at his March 30, 2007 deposition, Mr. Dill improperly refused, based on purported attorney-client privilege, to answer questions about conversations he had with the other defense witness, William Dowd, regarding several of the documents contained in the 126 page disclosure. An excerpt from Dill's deposition was included in Plaintiffs' papers. (Docket Nos. 35 and 36). Plaintiffs seek to compel a continued deposition of Mr. Dill regarding these documents and any conversations he had with others about them, as well as costs and fees incurred as a result of having to re-examine this witness.

Further, Plaintiffs' papers describe a series of events, including the maneuvering of the order of witnesses at the depositions, the last-minute 126 page disclosure and the allegedly baseless invocation of privilege, which they urge demonstrates deliberate bad faith tactics by Mr. Orbach for the purpose of limiting the deposition time of Mr. Dill. Ms. Pierrot avers that, upon arrival for the depositions, it was requested that Mr. Dowd be deposed first when it was actually Mr. Dill who had to leave early that day to catch a flight home to Massachusetts. Counsel was not told of Mr. Dill's travel arrangements until approximately 12:45 p.m., while still deposing Mr. Dowd. Mr. Dowd's deposition had to be interrupted and the questioning of Mr. Dill commenced, but was necessarily terminated after just over an hour in order to accommodate his flight plans. At that time, Plaintiffs' counsel made it clear that the examination of Mr. Dill was not complete. Plaintiffs seek an Order compelling Mr. Dill to appear at Plaintiffs' counsel's offices to complete the

examination, and also seek costs and fees related to this continued examination and sanctions for the deliberate obstructive tactics.

As expected, Mr. Orbach's description of the above events is quite different. With respect to Mr. Dill's refusal to testify based on privilege, counsel claims that it was in response to only one question and was properly interposed. With respect to the maneuvering of the witnesses, counsel claims that it was done because Mr. Dowd had arrived before Mr. Dill and counsel was trying to be prompt and accommodate the attorneys' and the witnesses' travel plans.[4] Further, Mr. Orbach argues that the schedule would not have been a problem had Ms. Pierrot adhered to her estimate that each deposition would take approximately an hour or two. Nevertheless, Mr. Orbach states that he offered to respond to a request to reconvene Mr. Dill's deposition at the appropriate time but, rather than confer on this issue, Plaintiffs filed the instant motion.

Defendants generally claim that Plaintiffs' Motion must be denied because they failed to comply with Rule 37 of the Local Rules for Civil Procedure for the Western District of New York, which requires the moving party to affirm that good faith efforts were made to attempt to resolve discovery disputes before bringing a motion. Defendants claim that no attempt was made by Plaintiffs to resolve *any* of the instant disputes. In response, the affidavit in support of the motion points to the several attempts Ms. Pierrot made in an effort to get Defendants to comply with the previous Order. Plaintiffs also claim that, with respect to the deposition disputes, they had no time to make further attempts at resolution

---

[4] The perceived accommodations of Plaintiffs's travel plans included delaying the commencement of the depositions until 10:15 am (for travel to Syracuse) and completing them in one day so as to avoid an overnight stay in Syracuse.

in light of the looming discovery deadline and also point to the prior lack of cooperation by Defense counsel.  Finally, they take the position that their motion is one for sanctions for failure to comply with the previous Order and does not require an affirmation of good faith.

### III.  DISCUSSION AND ANALYSIS

**A.      The Depositions**

Plaintiffs did not comply with Local Rule 37 in that they failed to certify that they made a good faith effort to resolve this new issue before filing their motion.  This Rule states, in pertinent part, that:

> [N]o motion for discovery and/or production of documents under Federal Rules of Civil Procedure 26-37 shall be heard unless moving counsel notifies the Court by written affidavit that sincere attempts to resolve the discovery dispute have been made. Such affidavit shall detail the times and places of the parties' meetings, correspondence or discussions concerning the discovery dispute, and the names of all parties participating therein.

This rule is similar to rules adopted in many courts across the country and is commonly known as a "meet and confer requirement".  It is designed to "embod[y] a policy of encouraging voluntary resolution of pre-trial disputes, in the interest of judicial and client economy and efficient processing of cases." Matsushita Elec. Corp. of America v. 212 Copiers Corp., 1996 WL 87245, *1 (S.D.N.Y. 1996).  Ms. Pierrot's supporting affidavit contains no evidence or suggestion that an attempt was ever made to resolve the disputes that arose during depositions.  See Chum Ltd. v. Lisowski, 2001 WL 243541, *13 (S.D.N.Y. 2001).  Further, this Court finds that the discussion between the attorneys on the record

at the deposition[5] does not satisfy this requirement.  *See, e.g.* Alexander v. F.B.I., 186 F.R.D. 185 (D.D.C. 1999) (suspending deposition and stating intent to seek relief from the Court did not satisfy the local rule's meet and confer requirement); *see generally,* Ross v. Citifinancial, Inc., 203 F.R.D. 239 (D.C. Miss. 2001) (Copies of correspondence between counsel discussing discovery sought by plaintiffs in their motion to compel did not satisfy the requirement that they attach a certification of good faith to the discovery motion.).

There is some persuasive authority in other districts that a looming discovery deadline can be sufficient to waive the requirements of a meet and confer rule.  *See* Care Entl. Corp. v. M2 Techs. Inc., 2006 WL 1517742, *3 (E.D.N.Y. 2006) ("Courts have excused a failure to meet and confer where: (1) under the circumstances, the parties do not have time to attempt to reach an agreement; or (2) an attempt to compromise would have been clearly futile." (*citing* Yoon v. Celebrity Cruises, Inc., 1999 WL 135222, *6 (S.D.N.Y. 1999), *quoting* Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1998 WL 67672, at *3 (S.D.N.Y. 1999)); Imperial Chems. Indus., PLC v. Barr Labs., Inc., 126 F.R.D. 467 (S.D.N.Y. 1989) (excusing failure to comply with conference requirement of local rule given "exigencies of time").  Nevertheless, at this time, this Court declines to decide if *this District's* local meet and confer rule can be waived due to "exigencies of time" because such a ruling is unnecessary under the circumstances of this case.

More specifically, with respect to the dispute over the assertion of privilege, even if the Court were to excuse Plaintiffs' failure to comply with the local rule, it would deny this part of the motion because the inquiry was of little import to this litigation.  Plaintiffs'

---

[5] There appears to have been one discussion relating to the privilege dispute and another relating to Plaintiffs' counsel's attempt to reserve the right to recall Mr. Dill due to the scheduling problems.

counsel was questioning Mr. Dill about one document from the late-arriving 126 page disclosure and his related conversation with Mr. Dowd, who produced the document. The questions were clearly directed at when the document was located by Mr. Dowd, sent to Mr. Dill, and eventually to Plaintiffs. While arguably relevant to the instant sanctions motion for failure to comply with the previous Order, it is not relevant to the substance of this lawsuit. Further, the information is not needed to resolve the sanctions aspect of the pending motion.

With respect to the motion to compel further testimony of Mr. Dill and for sanctions for the purported manipulation of the witnesses, it appears that this portion of the motion is premature, as Mr. Orbach has now offered to make Mr. Dill available in Plaintiffs' counsel's office for further testimony (*see* Docket No. 38, Ex. L, p. 4). Although the offer was conveyed in an attempt to get Plaintiffs to withdraw the instant motion, this Court presumes that counsel will continue to honor it. Therefore, it will deny this portion of the motion without prejudice, but will reconsider it, including the request for sanctions, if Defense counsel chooses not to produce Mr. Dill in accordance with the aforementioned offer.

**B.      Failure to comply with the previous Order**

Defendants' arguments relative to lack of compliance with Local Rule 37 are inapplicable to this portion of the motion. A party is not required to meet and confer or make a good faith certification when moving for sanctions for failure to comply with a prior Order which already granted a motion to compel. Sheehy v. Wehlage, Civ. No. 02-CV-592, 2007 WL 836816 (W.D.N.Y. 2007) (Scott, MJ); *accord* Freiria Trading Co. v. Maizoro S.A.

de C.V., 187 F.R.D. 47, 49 (D.P.R.1999); Reidy v. Runyon, 169 F.R.D. 486, 491 (E.D.N.Y.1997).

Plaintiffs request an order compelling Defendants to comply with the previous Order, as well as the full panoply of sanctions available under the Federal Rules of Civil Procedure.

After a thorough review of the matter, this Court finds that Defendants did not comply with Judge Elfvin's previous Order.  The Order required Defendants to produce the specified documents within 60 days – to wit, February 5, 2007.  Discovery was extended so that the necessary depositions could be conducted with the benefit of these documents. Plaintiffs' counsel inquired of defense counsel about the status of production on January 19, 2007. (Docket No. 40, Ex. B).  On the final day to comply, Defendants produced 1,314 pages of documents. (Docket No. 38, ¶ 6).  On March 7, 2007, after review of the voluminous package, which was produced *en masse* and in a disassociated and unorganized fashion, Ms. Pierrot sent a letter to Mr. Orbach indicating that she considered the responses to be inadequate and outlined what documents she thought fell within the parameters of the Order.  On March 26, 2007, she wrote to him again and further specified the inadequacies and what documents may be required in order to cure these deficiencies. (*see* Docket Nos. 33-2 and 34).

The 126 page eve-of-deposition disclosure was sent three (3) days later, in direct response to these letters.   The Court finds that the documents contained in this transmission, in whole or in substantial part, were not intended to be a courtesy response to new requests.  The Court is not persuaded that the assertions in the cover letter Mr.

Orbach sent to Ms. Pierrot with this transmission (that he considered some of the requests in her two previous letters to be a change or expansion of the original requests) were anything other than a tactical excuse for the failure to timely produce the documents. The Court has reviewed the requests which were the subject of the previous Order and the facsimile cover letter's description of the documents and finds that the documents are reasonably encompassed within the previous Order. By producing these documents on March 29, 2007, Defendants failed to comply with the previous Order.

However, the Court is not convinced that Defendants engaged in a deliberate tactic to frustrate Plaintiffs' discovery and deposition efforts. It is true that Mr. Dill testified that some of the new documents were discovered more than a couple of days ago (see Docket No. 36, p. 2), and Mr. Dowd testified that he was instructed to search for documents in late February or early March, after the deadline for production had expired. However, this was not, as Ms. Pierrot suggests, the only time Mr. Dowd was asked to search for documents. Mr. Dowd also testified that he was involved in the initial search for discovery documents (see Docket No. 38, Ex. C, pp. 2 - 3). It is reasonable to assume that the most recent search request was made in response to Ms. Pierrot's letters to Mr. Orbach indicating deficiencies in the original production. The Court notes, however, that no subsequent search requests seemed to have been made of Mr. Dowd in response to the previous Order. Rather, it appears that he was asked to conduct a subsequent search only after Ms. Pierrot intimated that production had not been compliant with the previous Order.

With respect to any documents that may have been generated by the consulting companies (Hewitt Associates and Benefit Development Group), the Court likewise finds

that the failure to disclose these, to the extent that they exist, violates the previous Order. The Court finds such documents clearly relevant to Supplemental Document Request No. 7, which the previous Order required Defendant National Grid to produce (*see* p. 3, *infra*). The Hewitt Associates document contained in the February 5 package – the first disclosure pursuant to that previous Order – is an acknowledgment that such documents and reports are reasonably encompassed within the previous Order. Ms. Pierrot's failure to identify this document sooner is understandable, given the volume of documents she had to review. Also understandable is her skepticism that all of the Hewitt Associates and Benefit Development Group's documents have either been produced or do not exist, as asserted by Mr. Orbach. That assertion is questionable in light of the witnesses' testimony submitted in connection with this motion.

Plaintiffs' motion with respect to any documents generated by Hewitt Associates and Benefit Development Group that in any way mention or relate to Plan A's change, modification or termination is granted. If no such documents exist, Defendants, not their counsel, shall so state definitively by way of affirmation.

**C.     Sanctions**

It is axiomatic that this Court has wide discretion to impose sanctions and determine the type of sanction to be imposed under Rule 37. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir.2002)*;* Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir.1999), *cert. denied*, 528 U.S. 1119, 120 S. Ct. 940, 145 L. Ed. 2d 818 (2000) (*citing* New York State NOW v. Terry, 886 F.2d 1339, 1354 (2d Cir.1989)). The sanctions available under Rule 37(b) for failing to comply with a court order include an

order: establishing facts (FED. R. CIV. P. 37(b)(2)(b)(2)(A)); precluding certain evidence, issues or claims (FED. R. CIV. P. 37(b)(2)(B)); striking pleadings or dismissing an action (FED. R. CIV. P. 37(b)(2)(C)); or treating the failure to comply as a contempt of court (FED. R. CIV. P. 37(b)(2)(D)).  Rule 37(b) also provides that "[i]n lieu of any of the foregoing orders [awarding sanctions] or in addition thereto, the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b).

"Among the factors a court should consider in selecting an appropriate sanction are (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance, and (4) whether the non-compliant party has been warned of the consequences of non-compliance." 3801 Beach Channel, Inc. v. Shvartzman, 2007 WL 2891119, *4 (E.D.N.Y. 2007). "No particular factor is dispositive, and "sanctions must be weighed in light of the full record in the case." Id. (*citing* Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir.1979) and Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642, 96 S. Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam)).

The dismissal of a claim or preclusion of evidence for failure to respond to a discovery request is a drastic remedy usually limited to cases involving willfulness or bad faith on the part of a disobedient party and are not warranted here. Burnett v. Venturi, 903 F. Supp. 304, 309 (N.D.N.Y. 1995).  Further, until today, Defendants have not been warned

that the Court would consider some of the more severe consequences of non-compliance. Lastly, the non-compliance with the previous Order, although somewhat disruptive to the depositions in this case, did not result in a substantial delay in the prosecution of Plaintiffs' claims.

However, the Court is concerned about the uncooperative and distrustful tone that has been set in this case, of which the violation of the previous Order is one manifestation. This Court notes that this is the third discovery motion in this case, each of which has had merit. In light of all of the circumstances, this Court will award Plaintiffs the costs and reasonable attorney's fees incurred in the continued deposition of Mr. Dill and the making of the instant motion. Defendants are cautioned that any further determination that they have not complied with this Order or the previous Order will necessarily result in more drastic sanctions.

## IV.  CONCLUSION

For the reasons stated and in accordance with the directives above, Defendants will be ordered to produce additional documents pursuant to the previous Order, produce Mr. Dill for completion of his deposition and pay Plaintiffs' costs and reasonable attorneys' fees for the making of this motion and any continued deposition of Mr. Dill.

## V.  ORDERS

IT IS HEREBY ORDERED that, Plaintiffs motion (Docket No. 32) is GRANTED in part and DENIED in part in accordance with the opinion above.

FURTHER, that within 30 days of the entry of this Decision and Order, Defendants are to produce any documents generated by Hewitt Associates and Benefit Development

Group that in any way mention or relate to Plan A's change, modification or termination. If no such documents exist, Defendants, not their counsel, shall so state definitively by way of affirmation.

FURTHER, that Defendants are to pay Plaintiffs' costs and reasonable attorneys' fees incurred both in the making of the instant motion and any re-examination of the witness, Mr. Dill.

FURTHER, that discovery herein is extended only to accommodate the production of documents ordered herein and any re-examination of Mr. Dill, which shall occur no later than January 31, 2008, at which time discovery in this case shall be deemed closed.

SO ORDERED.

Dated:      December 18, 2007
            Buffalo, New York

                                              /s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                           United States District Judge