UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANK AMATANGELO, JOHN L. ARGAY,
WILLIAM J. BONEBERG, PAUL K. DAMMERS,
DANIEL DARJANY, GARY P. DENAULT,
CHRISTOPHER DOOL, ROGER A. DOOLEY,
ROBERT EASTHAM, WILLIAM A. FLEMING,
RICHARD J. HANDZEL, GERALD D. LINDSEY,
WILLIAM LOBKO, KAREN S. MAXWELL,
JOHN S. McCOY, ROBERT T. MEARON,
DAVID R. NORTON, SHARON OSBORNE,             **DECISION AND ORDER**
JAMES R. PATERSON, THEODORE W. PYTEL,             04-CV-246S
PATRICK REAP, LAWRENCE D. RIORDAN,
MICHAEL SCHLEGAL, DAVID SLATTERY,
WILLIAM B. SPENCER, JEFFREY A. STEGER,
ROMAN SZUL, and GARY VANHATTEN,

                              Plaintiffs,
              v.

NATIONAL GRID USA SERVICE COMPANY, INC.
and NIAGARA MOHAWK POWER CORPORATION,

                              Defendants.

## I. INTRODUCTION

In this action, twenty-eight individual plaintiffs assert claims pursuant to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Plaintiffs'

claims arise from Defendants' decision to amend Plaintiffs' post-retirement life insurance

plan.  Plaintiffs seek reinstatement of the original plan, and, further, seek recovery of their

alleged overpayment of excessive premiums for supplementary insurance.  Presently

before this Court is Plaintiffs' Motion for Partial Summary Judgment and Defendants'

Motion for Summary Judgment.[1]  For the reasons discussed below, Plaintiffs' motion is

denied and Defendants' motion is granted.

## II.  BACKGROUND

### A.    Facts

Plaintiffs are twenty-eight employees of Defendants National Grid USA Service

Company, Inc. ("National Grid") and Niagara Mohawk Power Corporation ("Niagara

Mohawk").  In or around 2002, National Grid merged and became Niagara Mohawk.

(Plaintiffs' Rule 56 Statement of Undisputed Facts ("Pls.' Statement"), Docket No. 66-4, ¶

60.)  All of the plaintiffs began working for Niagara Mohawk on or before October 1, 1982.

(*Id.* at ¶ 1.)

Each plaintiff participated in Niagara Mohawk's Group Life Insurance Program under

a Group Insurance Policy provided by Prudential Insurance Company of America

("Prudential").  (*Id.* at ¶¶ 2, 4.)  Until 1982, this plan was the only life insurance option

offered to management employees by Niagara Mohawk.  (*Id.* at ¶ 3; Defendants' Local

Rule 56.1(b) Response to Plaintiffs' Local Rule 56.1(a) Statement of Facts ("Defs.' Resp."),

Docket No. 76-2, ¶ 3.)  In October 1982, Niagara Mohawk implemented a second life

insurance option that also provided life insurance coverage during an employee's active

---

[1] In support of their motion, Plaintiffs filed a Memorandum of Law, a Local Rule 56.1 Statement of Undisputed Facts, a reply memorandum, and manually filed Plaintiffs' Exhibits A-X.  (Docket Nos. 66, 67, 68, 81.)  In opposition, Defendants filed a Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and a Response to Plaintiffs' Rule 56.1 statement of facts.  (Docket Nos. 76.)
In support of their motion, Defendants filed a memorandum of law, a Rule 56.1 Statement of Material Facts, the Declaration of Louis Orbach, Esq., the Declaration of Anne C. Geagan, and a reply memorandum.  (Docket Nos. 65, 80.)  In opposition, Plaintiffs filed the Affirmation of Christen Archer Pierrot, Esq. with Exhibits, a Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Objections to Defendants' Statement of Undisputed Facts.  (Docket Nos. 72, 73, 74)

employment.  (Plaintiffs' Statement, ¶ 19.)  This second life insurance option became known as "Plan B" while the original life insurance plan became known as "Plan A."  (*Id.* at ¶ 22.)  Plan A permitted employees to receive a life insurance benefit equivalent to either 1.5 or 2.5 times the employee's retiring salary (reduced by 10% each year, beginning at age 65, until reaching a minimum of 50% of the amount of the employee's life insurance coverage at retirement).  (*Id.* at ¶ 2.)  Plan B, by contrast, provided a flat-sum upon retirement equal to, at present, $20,000.  (*See id.* at ¶ 19.)  Non-represented employees hired on or after October 1, 1982 were limited to choosing Plan B.  (*Id.* at ¶ 27.)  In 1982, plaintiffs were informed that should they elect not to continue Plan A coverage, Plan A would no longer be available to them.  (*Id.* at ¶¶ 27-28.)  All plaintiffs elected to continue Plan A coverage.  (*Id.* at ¶ 29.)

In April 1992, Niagara Mohawk informed Plan A participants that in order to retain Plan A coverage, they would be required to purchase Supplemental Insurance Coverage in the amount of 1 times the employees' salary at a rate of $1.00 per $1,000 worth of supplemental coverage.  (*Id.* at ¶ 31.)  Although Plan A participants were required to pay $1.00 per $1,000 worth of supplemental coverage, Niagara Mohawk only paid premiums on this supplemental coverage at a rate of approximately $.30 per $1,000 worth of coverage.  (*Id.* at ¶ 40.)  All plaintiffs chose to maintain Plan A coverage and purchased the supplemental coverage.  (*Id.* at ¶ 49.)

Following the merger between Niagara Mohawk and National Grid, Niagara Mohawk became a participating employer in the National Grid USA Companies' Group Insurance Plan as to its non-represented employees, effective January 1, 2003.  (Defs.' Resp. ¶¶ 60,

3

62).   Employees who had elected Plan A and who accepted voluntary retirement offers made in 2002 and 2003 based on their eligibility would be provided life insurance coverage as per Plan A.   (*Id.* at ¶ 64).   All other Plan A participants would receive 50% times final pay, but would no longer be required to purchase supplemental coverage.   (*Id.* at ¶ 61; Plaintiffs' Statement ¶ 61).   Plaintiffs now seek enforcement of the original Plan A's benefits and an award for damages covering all losses plaintiffs incurred as a result of Defendants' reduction of Plan A benefits.

**B.   Procedural History**

Plaintiffs commenced this action April 2, 2004 by filing a complaint in the United States District Court for the Western District of New York. (Complaint, Docket No. 1.) Plaintiffs' subsequently filed an amended complaint on December, 13, 2005.  (Amended Complaint ("Am. Comp."), Docket No. 18.) Plaintiffs allege they are entitled to enforce their rights and recover benefits pursuant to § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1) and 29 U.S.C. § 1132(a)(3), as well as under principles of contract law and promissory estoppel.   (Am. Comp. ¶¶ 64, 71, 75, 97-98).   Plaintiffs further allege that Defendant National Grid, as the Plan Administrator of Plan A, has breached its fiduciary duty to Plaintiffs pursuant to § 404(a)(1)(A), (B), and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), and (D), as well as committing anti-inurement violations and engaging in transactions prohibited under ERISA.  (*Id.* at ¶¶ 87, 114, 133, 135.) Finally, Plaintiffs allege Defendants' caused them financial harm by failing to provide adequate notice of Plaintiffs' right to convert their Plan A into an individual plan, as well as improperly reducing their post-retirement benefits under § 204(g) of ERISA, 29 U.S.C. § 1054(g).  (*Id.* at ¶¶ 112, 142-43.)

On August 4, 2008 Defendants filed a Motion for Summary Judgment seeking dismissal of all claims.  (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs.' Mot."), Docket No. 65-16.)  Plaintiffs filed a cross-motion for summary judgment as to their First, Second, Third, Ninth, Tenth, and Eleventh causes of action.  (Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pls.' Mot."), Docket No. 66-2.)

## III.  DISCUSSION

### A.    Legal Standards

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the evidence and the inferences drawn therefrom must be "viewed in the light most favorable to the party opposing the motion."  *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  Further, the function of the court is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

### B.    Plaintiffs' and Defendants' Cross-Motions for Summary Judgment

Plaintiffs argue that their Plan A benefits have contractually vested on the basis of various plan documents such that Defendants are precluded from amending Plan A's life

insurance policy.  (Pls.' Mot. 2-3.)  Plaintiffs also allege a fiduciary breach because Defendants charged Plaintiffs premiums in excess of those required to purchase supplementary life insurance, used the excess contributions to off-set Defendants' own financial obligations, and failed to inform Plaintiffs of the fact that they were paying premiums in excess of those required to maintain the coverage.  (*Id.* at 17-18.)  Plaintiffs' finally argue that Defendants breached a fiduciary duty by failing to give adequate notice of Plaintiffs' right to convert their policies to individual plans and unlawfully decreased Plaintiffs' accrued benefits through amendments to Plan A.  (Am. Comp. ¶¶112, 142-43.)

Defendants in their Opposition Memorandum and their own Motion for Summary Judgment respond that Plaintiffs have failed to identify written plan language that could reasonably be interpreted as vesting Plaintiffs' benefits.  (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Opp'n"), Docket Nos. 76, 4, 10.)  Additionally, Defendants argue that summary judgment in Plaintiffs' favor is inappropriate because the amount Plaintiffs' were charged under Plan A is a matter of plan design that does not give rise to a fiduciary relationship, there was no duty to disclose plan costs, and demands for reimbursement constitute prohibited money damages under ERISA.  (*Id.* at 22-23.)  This Court agrees that Plaintiffs' Motion for Partial Summary Judgment should be denied, and that Defendants' Motion for Summary Judgment should be granted.

### 1.     Plaintiffs' Vested Benefits Claims

Plaintiffs assert that Defendants' were not permitted to amend the benefits provided under Plan A because the plan documents provided Plaintiffs with permanent post-

retirement life insurance benefits.   § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1) permit a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   Although employers are free to modify the terms of a welfare benefit plan, employers may make enforceable promises that will vest benefits, creating contractual rights.   *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 82 (2d Cir. 2001).

The standard for determining whether lifetime health benefits are contractually vested is whether plan documents contain "specific written language that is reasonably susceptible to interpretation as a promise to vest the benefits."   *Bouboulis v. Transport Workers Union*, 442 F.3d 55, 60 (2d Cir. 2006) (quoting *Devlin*, 274 F.3d at 84) (internal quotation marks omitted).   To avoid dismissal, a plaintiff need not identify unambiguous language, but can reach the trier of fact on a showing of ambiguous plan language that could reasonably be read to vest benefits.   *Devlin*, 274 F.3d at 83.   However, although ambiguous language suffices to avoid dismissal, the mere absence of language regarding the vesting of lifetime benefits does not create a promise to vest.   *Bouboulis*, 442 F.3d at 61.   By contrast, "lifetime" language specifying that life insurance benefits will remain at particular levels for the rest of a beneficiary's life can create an ambiguity sufficient to reach the trier of fact.   *See Bouboulis*, 442 F.3d at 61 (citing *Devlin*, 274 F.3d at 85).   Even where a plaintiff identifies such language, an express reservation of rights will defeat a vested benefits claim because such a plan could not be reasonably read to vest lifetime benefits.   *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 98 (2d Cir. 2001).

Here, Plaintiffs point to numerous plan documents they allege contain language sufficient to satisfy the standard for vested benefits.  This court must consider each in turn. *Devlin*, 274 F.3d at 82.

Plaintiffs first rely on a 1974 Certificate of Issuance by Prudential to Niagara Mohawk.  (Pls.' Mot. 3-5.)  This document includes the details of Plaintiffs' retirement benefits and provides that the policy would terminate upon termination of employment. (Plaintiffs' Exhibits for Memorandum of Law in Support of Motion for Summary Judgment ("Pls.' Ex."), Docket Nos. 67-68, B, pp.2-4).  The same certificate also provides that the employer "will pay said amount to the Beneficiary . . . upon receipt of due proof of the death of said employee while the insurance on the life of said employee under said Policy *is in force*." (*Id.* at p.1) (emphasis added).  This language limits the application of this policy for the duration that it is active, rather than unequivocally creating it for the lifetime of the beneficiary.  Additionally, although Plaintiffs argue that termination of the policy is limited to termination of employment, (Pls.' Mot. 4), the fact that the policy does not state other grounds for termination is not sufficient to find ambiguous language.  *Bouboulis*, 442 F.3d at 61 ("[T]he absence of such language alone cannot create a promise to vest."  (quoting *Bouboulis v. Transportation Workers Union of Greater New York, Local 100*, 2004 WL 1555129, at *4 (S.D.N.Y. Jul. 9, 2004))).  Finally, as was the case in *Bouboulis*, here there is none of the "lifetime" language that could act to create an ambiguity.  *Id.*

Plaintiffs next present a series of documents ranging from 1967 to 1985.  These documents include a 1967 booklet entitled *Your Family Security Program*, as well as summary plan descriptions ("SPD") that each reiterate descriptions of Plan A's benefits.

8

(Pls.' Mot. 5-7.)   None include language that can be read to contractually vest Plaintiffs' benefits.   Plaintiffs again point the Court to the insurance termination clauses contained in these documents, but for the reasons stated above, these are insufficient to create a promise to vest.   *Bouboulis*, 442 F.3d at 61.   Moreover, unlike the 1974 Certificate, the clauses Plaintiffs point to in these documents do state that the life insurance policy would end "[u]pon termination of the plan." (Pls.' Ex. A, p.11.)   Such language has been understood to reserve the employer's right to terminate the plan and therefore proves the very opposite of what Plaintiffs seek.   *See American Federation of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 982 (2d Cir. 1997) ("*Multifoods*").[2]   Where an SPD preserves the employer's right to terminate the plan, benefits contained therein do not vest. *See id.*

Plaintiffs next turn to a 1992 SPD.   (Pls.' Mot. 15.)   This document, however, contains an even more express reservation of rights clause, and states that "Niagara Mohawk Power Corporation reserves the right to change or end [the policy] at any time." (Pls.' Mot. 15.)   Even were Plaintiffs able to point this Court to a promise of lifetime life insurance coverage within this document, Plaintiffs' benefits would not vest.   As the court held in *Abbruscato*, where SPD language clearly reserves an employer's right to amend or terminate coverage, an SPD "is not susceptible to an interpretation that promises vested life insurance benefits," even where the same document contains a promise of lifetime benefits.   274 F.3d at 99.

---

[2] In *Multifoods* the insurance policy specified that "The coverage . . . will terminate . . . if this Health and Welfare Plan is discontinued." *American Federation of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 1996 WL 378175, at *3 (W.D.N.Y. 1996).

Finally, Plaintiffs present a 1997 SPD. (Pls.' Mot. 8). This document, for the first time, uses express "lifetime" language of the kind that has been found to raise a question as to whether an employer has contractually vested benefit rights. (Pls. Ex. W, p.11 ("[l]f you retire at age 68 . . . [t]here would be two more reductions down to 50% where it would stay until your death.")) However, the same document contains a reservation of rights identical to that in the 1992 SPD. (*Id.*) As a result, this SPD also cannot be reasonably read to vest Plaintiffs' benefits. *See Abbruscato*, 274 F.3d at 99.

Plaintiffs' also present extrinsic evidence to clarify ambiguity in the plan in favor of their interpretation. (Pls.' Mot. 10-11). However, because this Court determines that there is no ambiguity in the above-cited documents, this Court need not consider extrinsic evidence in resolving their meaning. *See Abbruscato*, 274 F.3d at 98.

In addition to arguing that the language of the various SPDs demonstrates a vested promise to pay benefits, Plaintiffs argue that a unilateral contract was created between them and Defendant Niagara Mohawk in 1982 and 1992 when Defendant offered Plaintiffs the option of retaining Plan A life insurance coverage. (Pls.' Mot. 11). Plaintiffs allege that they accepted Defendants' offer in 1982 by making a one-time election to retain Plan A and foregoing Plan B. (*Id.* at 12-13.) Alternatively, Plaintiffs allege they accepted Defendants unilateral contract offer in 1992 by purchasing the supplemental insurance coverage Defendant Niagara Mohawk required for beneficiaries to retain Plan A. (*Id.* at 13-16).

This Court concludes that neither the 1982 election nor the 1992 purchase constituted the creation of a unilateral contract for the same reason it rejects Plaintiffs' contention that their benefits have vested. The court in *Devlin* did find that SPD provisions

10

at issue in that case could be construed as a unilateral contract.  274 F.3d at 84-85.

However, that court found that defendant could not modify the policy only because the

reservation of rights was not included in the original SPDs.  *Id.*  Unlike the SPDs in *Devlin*

which did contain promissory and lifetime language predating defendant's reservation of

rights, here the relevant policy documents reserved Defendants' right to terminate the

policy long before Plaintiffs' performance.  (Pls.' Ex. A, 11.)  Where the right to terminate

a policy is reserved, the lesser right to amend is implied.  *Multifoods*, 116 F.3d at 983.

Defendants therefore were already entitled to modify the policy as early as 1976, several

years prior to when Plaintiffs allege a unilateral contract came into existence.  (Pls. Ex. C,

p.3.)  Plaintiffs cannot now claim that their rights were vested through a unilateral contract

that would, in any case, be based on the same SPDs that contain Defendants' reservation

of rights.  *See Multifoods*, 116 F.3d at 982.

Plaintiffs' final argument rests on the basis of principles of promissory estoppel.

(Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment ("Pls.

Opp'n") 15).  A plaintiff must satisfy four elements to succeed on a promissory estoppel

claim: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4)

an injustice if the promise is not enforced."  *Weinreb v. Hosp. For Joint Diseases*

*Orthopeadic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005) (quoting *Schonholz v. Long Island*

*Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996).  When bringing a claim under ERISA, a

plaintiff must also demonstrate that there exist extraordinary circumstances calling for the

application of estoppel principles.  *Id.* (quoting *Devlin*, 274 F.3d at 85-86).  Here, this Court

has concluded that there is no written language that can reasonably be interpreted as a

promise.  *See* discussion *supra.*  Furthermore, for reasons overlapping with this Court's discussion below on Defendants' alleged misrepresentations, this Court finds that Plaintiffs have failed to present any evidence that could reasonably be interpreted as a promise. Plaintiffs' claim under promissory estoppel is denied.

In light of the foregoing analysis, Defendants' Motion for Summary Judgment as to Plaintiffs' First, Second, Third and Sixth causes of action will be granted.

### 2.      Plaintiffs' Fiduciary Duty Claims

An employer enters into a fiduciary relationship with their employees in relation to a benefits plan to the extent the employer has discretionary authority or control in the management or administration of the plan.  *Bouboulis*, 442 F.3d at 63.   ERISA §§ 404(a)(1)(A), (B), and (D) provide that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and- . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar in such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

*Id.* at 102 (quoting 29 U.S.C. § 1104(a)).

In the present case, the parties dispute whether Defendants use of Plaintiffs' contributions to pay premiums on the Prudential policy constitutes a fiduciary breach, whether Defendants made fiduciary misrepresentations to Plaintiffs, and whether

12

Defendants had a duty to notify Plaintiffs of that fact that payments under Plan A were being used to pay Plan B's premium liabilities.

At the outset, the Court notes that the mere act of an employer changing an insurance plan, such as by adding an additional benefit structure, does not trigger a violation of fiduciary duties. *Hughes Aircraft Co., v. Jacobson*, 525 U.S. 432, 443-44, 119 S. Ct. 755, 763, 142 L. Ed. 2d 881 (1999). "ERISA's fiduciary duty requirement simply is not implicated where [an employer], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated. *Id.* at 444. The creation of a new benefit structure does not create a second plan, provided the employer draws from a single pool to pay both the plan's pre and post-amendment obligations. *Id.* at 442.

In the present case, Plaintiffs allege that Defendants used contributions by Plan A participants to pay Defendants' insurance premium liabilities for employees covered under Plan B. Plaintiffs argue that the failure to use these contributions for the exclusive benefit of Plan A beneficiaries constitutes a breach of a fiduciary duty. (Pls.' Opp. 22.) § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan." ERISA's anti-inurement provision "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants." *Flanigan v. General Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (quoting *Hughes Aircraft*, 525 U.S. at 442).

Here, it is undisputed that all Plaintiffs' contributions were used to offset Defendants'

total insurance premium liabilities to Prudential.   (Plaintiffs' Objections to Defendants' Statement of Undisputed Facts ("Pls.' Objections"), Docket No. 74, ¶ 6.)  These liabilities consisted of Plan A and Plan B participants, who were both covered under the same Prudential group policy.  (*See* Declaration of Karyle S. Hills Declaration, Docket No. 76-3, ¶ 8.)  As a result, because Defendants did not use Plaintiffs' payments other than to pay liabilities under a single plan, consisting of Plan A and Plan B benefit structures, ERISA's anti-inurement provision under § 403(c)(1) is not violated, and Plaintiffs' claim under that provision fails.

Similarly, Plaintiffs' claim that such a plan constitutes a prohibited transaction must fail on the same ground.  "A fiduciary with respect to a plan shall not-. . . deal with the assets of the plan in his own interest or for his own account."  § 406 of ERISA, 29 U.S.C. § 1106(b)(1).   Because here all contributions were used for the purposes of paying Defendants' premium liabilities to Prudential, Defendants' have engaged in no unlawful transaction.  *See Hughes Aircraft*, 525 U.S. at 442.  For this reason, the Court grants Defendants' Motion for Summary Judgment as to Plaintiffs' Tenth and Eleventh causes of action.

Nevertheless, Defendants may have breached a fiduciary duty based on representations it made to Plaintiffs regarding their life insurance benefits.  "[W]hen an employer communicates with plan participants about the contents of the plan, and when 'reasonable employees . . . could have thought that the employer was communicating with them *both* in its capacity as employer *and* in its capacity as plan administrator,' the employer can be found to be acting as a fiduciary under ERISA."  *Bouboulis*, 442 F.3d at

65 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 503, 116 S. Ct. 1065, 1073, 134 L. Ed. 2d 130 (1996)) (internal alterations omitted, emphasis in original).  Even where there is no promise to vest life insurance benefits, a defendant could still commit a fiduciary misrepresentation through other communications.  *Devlin*, 274 F.3d at 88.  Plaintiffs allege that a material dispute exists as to whether Defendants'  engaged in conduct they knew or should have known would mislead Plaintiffs regarding material facts of their coverage. (Pls.' Opp. 25).

Here, the Court agrees that Defendants have communicated with Plaintiffs as fiduciaries.  Plaintiffs have submitted sufficient evidence to establish that Defendants communicated with Plaintiffs regarding their plan coverage through employee benefit meetings.  (Deposition of Kathleen Spenard, Pls. Ex. G, pp. 145:14 - 147:16.)  Much as in *Bouboulis* where the court found that "[a]ssurances of plan benefits made to employees considering retirement could reasonably be thought to be communicated in the capacity of both an employer and plan administrator," so too can Plaintiffs here, in considering whether to retain Plan A or go over to Plan B, be found to have reasonably believed that Defendant Niagara Mohawk was communicating with them as both employer and plan administrator.

Having determined that Defendants could have breached a fiduciary duty through their representations, Plaintiffs must still show that there were affirmative or intentional misrepresentations on which plaintiffs reasonably and detrimentally relied.  A fiduciary has "a duty to deal fairly and honestly with its beneficiaries."  *Devlin*, 274 F.3d at 88 (quoting *Ballone v. Eastment Kodak Co.*, 109 F.3d 117, 124 (2d Cir. 1997).  This duty is breached

where plaintiffs can establish that a fiduciary made a material misrepresentation or omission, on which plaintiff reasonably relied to their detriment. *Bell v. Pfizer, Inc.*, 626 F.3d 66, 74-75 (2d Cir. 2010); *see also Bouboulis*, 442 F.3d at 66; *Ballone*, 109 F.3d at 122, 126.

In *Devlin* the defendant repeatedly described life insurance benefits as permanent. 274 F.3d at 88-89. The court remanded to permit the trier of fact to determine whether the defendant's communications included affirmative misrepresentations or failed to provide completely accurate plan information. *Id.* Similarly here, Plaintiffs proffer testimony regarding meetings at which Defendants allegedly represented to Plaintiffs that their benefits would not change. Pls.' Opp. 17-18. However, plaintiffs could recall being expressly told by Defendants that Plan A benefits would never change. At most, their testimony highlights the plaintiffs' beliefs that benefits would not be subject to change. They do not, however, show that Defendants affirmatively misled them. *(See e.g.*, Affirmation of Christen Archer Pierrot, Esq., Docket No. 72, Deposition of Richard J. Handzel ("Handzel Dep."), Ex. No. 9, 28:1 - 29:10, 52:3 - 10; Deposition of David W. Slattery ("Slattery Dep."), Ex. No. 21, 53:14 - 54:11; Deposition of Gary VanHatten,  Ex. No. 24, 31:7 - 31:20 ("I was never told that Plan A couldn't be changed, I was never - I never assumed that it could be."))

Plaintiffs differ as to the exact form of Defendants' oral communications. (*Compare* Slattery Dep. 42:20 - 43:11 (meeting at which Plan B was discussed as only occasion on which Defendants had oral communications with Niagara Mohawk employees concerning Plan A) *with* Handzel Dep. 28:1 - 29:10, 52:3 - 10 (Niagara Mohawk's employee relations

16

agent described plan).) However, in none of the transcripts is there an affirmative misrepresentation by Defendants. *(See e.g.,* Declaration of Louis Orbach ("Orbach Decl."), Docket No. 65, Deposition of Robert T. Mearon, Ex. 15, 30:1-15; Deposition of Daniel Darjany, Ex. 5, 33:6-23.)

Having failed to identify any examples of affirmative misrepresentations by Defendants, this Court finds that there is no genuine issue of material fact in dispute and grants Defendants' motion for summary judgment as to Plaintiffs' Fifth and Eighth causes of action.

To the extent Plaintiffs allege that Defendants' omitted material information resulting in Plaintiffs' detrimental reliance, Defendants' Motion for Summary Judgment must still be granted. (*See* Am. Comp. ¶ 127)  First, Defendants were not required to inform Plaintiffs of potential changes to Plan A, including the creation of Plan B.  Fiduciaries are under no duty to voluntarily disclose information regarding changes to a benefit plan before they are implemented. *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir. 1996).  Second, even after Plan B came into existence, Defendants did not have a duty to disclose the proportion by which Plan A and Plan B contributions were paying for Defendants' premium liabilities under Prudential's group insurance policy.

The affirmative duty to disclose under ERISA is limited to only a few circumstances. *Bell*, 626 F.3d at 75 n.4.  Although courts have recognized that fiduciaries may be held liable for non-disclosure where "the omitted information was necessary to an employee's intelligent decision about retirement," *Flanigan*, 242 F.3d at 84, Defendants did not withhold information relating to the Plan's benefits.  Defendants provided Plaintiffs with the

17

rates under Plan A and Plan B, and how much Plaintiffs would need to pay in contributions under each.  (Pls.' Ex. K, pp. 9-10.)  Defendants were not required to disclose how the premium liabilities for each benefit structure are paid under the plan.  *See  Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 146 (2d Cir. 1997) ("In light of the precise language used by Congress in the various sections of ERISA, we see no presumption favoring disclosure to particiants beyond what is required by section 104(b)(4).")  Courts in similar contexts have found that plan administrators are under no obligation to disclose cost-containment mechanisms or financial incentives for cost savings, *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102-03 (2d Cir. 2005), actuarial reports, *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan*, 107 F.3d at 146-47, or physician compensation agreements, *Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 755 (S.D.N.Y. 1997).  On this basis, Defendants' Motion for Summary Judgment as to Plaintiffs' Fourth and Ninth causes of action is granted.

### 3.    Plaintiffs' Claims under ERISA § 102(b) and § 204(g)

Plaintiffs' final contentions are that Defendants failed to adequately notify Plaintiffs of a right to convert their coverage into an individual insurance plan, and that Defendants improperly reduced Plaintiffs' accrued benefits.

Plaintiffs claim that they had a right to convert their Plan A group term life insurance to an individual plan following a reduction of benefits or termination of the plan.  (*See A*m. Comp.¶ 102.)  Specifically, Plaintiffs' claim that their conversion rights permitted them to convert their coverage to an individual life insurance within 31 days after their employee term life insurance coverage ended or was reduced.  Plaintiffs claim that Defendants failed

18

to provide adequate notice of this right following the reduction of benefits of Plan A.  (Am. Comp. ¶ 99-112).   Summary plan descriptions must include information describing "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." § 102(b) of ERISA, 29 U.S.C. § 1022(b).  In the present case, although Plaintiffs allege that Defendants "did not include notice of the right to convert in *any* of its summary plan descriptions," (Am. Comp. § 106), plaintiffs were informed of their conversion rights in the 1992 SPD.  (Orbach Decl., Ex. 29, p.13-14.)

Even if Plaintiffs had no notice, it is questionable whether they would have had a right to convert in this case because, as Defendants' point out, the coverage for which Plaintiffs were eligible increased in 2003 when Plaintiffs' benefit structure was amended. (Defs.' Mot. 16-17.)  This is relevant because the 1992 SPD contained a limitation on the individual contracts to which a policy could be converted.

> [T]he total amount of individual insurance which you may get in place of all your life insurance then ending under the Group Contract will not exceed the total amount of all your life insurance then ending under the Group Contract reduced by the amount of group life insurance from any carrier for which you are or become eligible within the next 45 days.

(Orbach Decl., Ex. 29, p.13-14.)  Plaintiffs do not dispute that prior to 2003, Plaintiffs were eligible for one and a half times their salary in employer-paid life insurance, whereas after 2003 Plaintiffs received two times their salary in employer-paid life insurance coverage, and have the option of purchasing up to five times their salary in optional life insurance coverage.  (*See* Pls.' Objection ¶ 6; Defendants' Local Rule 56.1 Statement of Material Facts ("Defs.' Statement"), Docket No. 65 ¶¶ 7, 11-12.)  Because the coverage for which

they were eligible increased, Plaintiffs had no conversion rights under Plan A.  (*See* Orbach Decl., Ex. 29, 13-14.)  Defendants' Motion for Summary Judgment as to Plaintiffs' Seventh cause of action is granted.

In their final claim, Plaintiffs seek to recover under ERISA's section 204(g)  "anti-cutback" provision, whereby amendments to pension plans that would diminish accrued benefits are prohibited.  *Perreca v. Gluck*, 295 F.3d 215, 228 (2d Cir. 2002).  Here, Plan A provides benefits to employees through the purchase of life insurance.  This brings Plan A under the definition of welfare benefit plans based on the definition in 29 U.S.C. § 1002. 29 U.S.C. § 1002(1); *see also Devlin*, 274 F.3d at 82 (treating lifetime life insurance benefits as welfare benefits); *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (long-term disability plans constitute employee welfare benefit plans).  Because § 204(g) is inapplicable to welfare benefit plans, ERISA's anti-cutback provision is of no avail to Plaintiffs.  *See Perreca*, 295 F.3d at 228.  As a result, Defendants' Motion for Summary Judgment on Plaintiffs' Twelfth cause of action is granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted, and Plaintiffs' Motion for Summary Judgment as to their First, Second, Third, Ninth, Tenth and Eleventh causes of action is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket

No. 65) is GRANTED.

FURTHER, that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 66) is DENIED.

FURTHER, that Plaintiffs' Motion to Modify Caption (Docket No. 82)  is DENIED as moot.

FURTHER, that the Clerk of the Court is directed to close this case.


SO ORDERED.

Date:  August 21, 2011
          Buffalo, New York


/s/William M. Skretny
William M. Skretny
Chief Judge
United States District Court